IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSIKA H.,[1]

    Plaintiff,

v.

Commissioner, Social Security
Administration,

    Defendant.

6:19-cv-00187-BR

OPINION AND ORDER

**KATHERINE EITENMILLER**
**MARK A. MANNING**
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

    Attorneys for Plaintiff

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**RYAN TA LU**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2034

      Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Jessika H. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on May 11, 2015, and alleged a disability onset date of April 5, 2008.  Tr. 177.[2]  Her

---

[2] Citations to the official transcript of record filed by the Commissioner on September 5, 2019, are referred to as "Tr."

application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on November 8, 2017. Tr. 65-113. At the hearing Plaintiff amended her alleged onset date to March 19, 2015. Tr. 71. Plaintiff and a vocational expert (VE) testified at the hearing, and Plaintiff was represented by an attorney.

On March 29, 2018, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 45-64. On December 4, 2018, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on June 29, 1966, and was 51 years old at the time of the hearing. Tr. 212. Plaintiff has a GED. Tr. 231. The ALJ found Plaintiff has past relevant work experience as a sales clerk. Tr. 58.[3]

Plaintiff alleges disability due to a "general anxiety disorder," Crohn's disease, fibromyalgia, post-traumatic stress disorder (PTSD), diabetes, depression, asthma, and plantar fasciitis. Tr. 115.

---

[3] In her Opening Brief Plaintiff asserts the ALJ erred when he found she "has past relevant work experience," but Plaintiff concedes the error is harmless because the ALJ found in Plaintiff's favor at Step Four of the sequential analysis.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 51, 55-57.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d*.* at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete

incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her March 19, 2015, amended alleged onset date.  Tr. 50.

At Step Two the ALJ found Plaintiff has the severe

impairments of PTSD, inflammatory bowel disease (IBD), and anxiety disorder. Tr. 50. The ALJ found Plaintiff's fibromyalgia is nonsevere. Tr. 51.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff has the RFC to perform light work with the following limitations: "no exposure to workplace hazards such as unprotected heights and exposed moving machinery"; access to a bathroom within five minutes of her workstation; and work that requires only simple, routine tasks with "only occasional contact with the general public and . . . coworkers." Tr. 53.

At Step Four the ALJ found Plaintiff is unable to perform her past relevant work. Tr. 58.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 59. Accordingly, the ALJ found Plaintiff is not disabled.

## **DISCUSSION**

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony and (2) partially rejected the opinions of examining psychologists Judith Eckstein, Ph.D., and Katherine Warner, Ph.D.

**I. The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he partially rejected

Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she cannot work because she has frequent panic attacks; suffers ocular migraines; and finds it difficult to go outside, to answer the door, and to answer the telephone.  Plaintiff stated she was not taking any medication for her anxiety because she has had bad reactions to a lot of medications and she has "addictive personality disorder,

which makes it hard for [her], to take most" medications. Tr. 78. Plaintiff testified she does not drink caffeine, does "yoga breathing," and smokes marijuana to control her anxiety. Tr. 78-79. Plaintiff noted she did not have any concerns about "using marijuana with [her] addictive personality" and is only afraid of pain and anxiety medications. Tr. 80. Plaintiff stated she sleeps poorly when she does not smoke marijuana and take trazadone, melatonin, and benadryl before bedtime. Plaintiff goes to the grocery store at night when "there's hardly anybody there," but two or three times a month she does not finish shopping due to anxiety. Tr. 84. Plaintiff avoids people and situations in which she has to talk to or "be around more than two or three people." Tr. 85. Plaintiff gets overwhelmed with stress every day, which causes her to have trouble breathing and chest pain. To calm down Plaintiff has to sit in her bedroom and listen to music for "a couple of hours." Tr. 86. Plaintiff cannot watch television, use Facebook, or use the internet because she is "easily spooked." Tr. 86.

Plaintiff has Crohn's Disease and IBD, which Plaintiff testified cause her to lose control of her bowels approximately once a week. Plaintiff stated she cannot work because of "stress/anxiety/panic attacks . . . [and] just being away from home is hard." Tr. 93. Plaintiff testified she would not be reliable in a job because of panic attacks and stress that cause "waves of exhaustion." Tr. 93.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [is] not entirely consistent with the medical evidence and other evidence in the record." Tr. 55. Specifically, the ALJ noted Sorin Petre, M.D., Plaintiff's treating physician, stated on October 8, 2014, that Plaintiff's Crohn's disease and symptoms were "well controlled by Remicade." Tr. 361. In August 2015 William Wu, M.D., Plaintiff's treating physician, noted "on Imuran 100 mg a day only, [Plaintiff's] bowel movements are now only 4 a day," down from 30 a day. Tr. 1880. In September 2015 Plaintiff reported to Dr. Wu that she was having only one bowel movement per day. In May 2016 Plaintiff reported to Dr. Wu that she was not "experiencing any symptoms related to her Crohn's disease[, she] feels 95% normal[,] she is having only one normal stool per day [and] occasionally skip[s] a day[, and] denies any blood per [*sic*] rectum." Tr. 1867. In October 2016 Plaintiff reported she "sees [Dr. Wu] about twice a year and [her Crohn's disease] is in remission." Tr. 1736. In February 2017 Henry Taylor, M.D., Plaintiff's treating physician, noted Plaintiff's Crohn's disease is "stable" and that Plaintiff reported it was "in remission." Tr. 1723-24. In September 2017 Plaintiff told Dr. Wu that "her Crohn's disease has been quiet and is well controlled with her current treatment of Imuran." Tr. 1862.

As to Plaintiff's PTSD and anxiety, the ALJ noted in December 2015 that Plaintiff reported her PTSD was "improved" with bupropion. In April 2016 Plaintiff consistently reported at her group-therapy sessions that her anxiety was improved and at a level of four out of ten "thanks to Wellbutrin."[4]  Tr. 1805-08. The record reflects Plaintiff reported her anxiety had improved due to bupropion in October 2016. On August 23, 2017, Plaintiff reported to Marcy Dean, F.N.P., that she had stopped taking Wellbutrin for four months because "she thought it was reacting with her fibromyalgia." Tr. 1833. Plaintiff advised F.N.P. Dean that she wanted to restart Wellbutrin because it "works well to control her anxiety." Tr. 1833.

The ALJ noted although Plaintiff testified she was unable to leave her home regularly, the record reflects Plaintiff attends weekly group-therapy sessions, attends medical appointments, goes to the grocery store weekly, and walks her dog in the neighborhood. In addition, Plaintiff's daughter stated in a May 2015 Third-Party Adult Function Report that Plaintiff "goes to doctor's therapy and specialists almost every other day." Tr. 249.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony because he provided clear and convincing reasons supported by substantial

---

[4] Wellbutrin is a brand-name of bupropion.

evidence in the record for doing so.

**II. The ALJ did not err when he partially rejected the opinions of Drs. Eckstein and Warner, examining psychologists.**

Plaintiff asserts the ALJ erred when he partially rejected the opinions of Drs. Eckstein and Warner, examining psychologists.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

**A. Dr. Eckstein**

On June 18, 2015, Dr. Eckstein conducted a psychological evaluation of Plaintiff.  Plaintiff reported her Crohn's disease "causes uncontrollable diarrhea and thus she rarely leaves the home for fear of accidents."  Tr. 959.  Plaintiff also reported "it takes her all day to do a sink full of dishes as well as other household tasks . . . because she's in pain all over."  Tr. 959.  Plaintiff stated she watches some television, but sometimes she cannot follow the programs and has

to turn off the television if the program is "even mildly upsetting." *Id.* Plaintiff noted she does not have any friends and only sees people when she goes to group therapy. Plaintiff reported she is able to sleep "more soundly with the use of Trazadone, Melatonin, and Benadryl, reporting no current nightmares." Tr. 960. Plaintiff said she has panic attacks "when [she] make[s] [her]self leave the house," which she does approximately three times per month. Tr. 960. Plaintiff reported she has "obsessive-compulsive symptoms," is fearful about germs, has difficulty concentrating, and forgets day-to-day things. Tr. 960. Dr. Eckstein gave Plaintiff a number of cognitive tests and found her "information fund was strong," she was able to recall "all of 3 words in a 5 limit time period," was able to repeat seven digits forward and four backward "within normal time limits," was able to do mathematical equations with only three errors in 16 problems, displayed good abstract reasoning, and performed 12 out of 15 on the Serial Seven's Subtest. Dr. Eckstein found Plaintiff "appears to be functioning well from a cognitive standpoint," but noted chronic pain can cause variability in cognitive awareness. Tr. 961. Dr. Eckstein concluded Plaintiff

> is hindered by chronic panic attacks, likely stemming from her diagnosis of [PTSD]. Even with the more recent improvement in mood . . . as a benefit of her individual and group counseling, it is unlikely that [Plaintiff] would be able to handle the stress of any consistent work expectations, particularly with her bowel issues.

Tr. 961.

The ALJ gave Dr. Eckstein's opinion "little weight" on the ground that it was rendered before Plaintiff's physical and psychological improvement with treatment in 2016 and 2017 as reflected in the record. Specifically, the ALJ noted the record reflects Plaintiff experienced improvement in her PTSD and anxiety symptoms in response to consistent therapy and medication. In addition, as noted, the record reflects Plaintiff's Crohn's disease is well-controlled and in remission with medication.

On this record the Court concludes the ALJ did not err when he gave little weight to Dr. Eckstein's opinion because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.    Dr. Warner**

On September 15, 2017, Dr. Warner completed a Psychological Assessment of Plaintiff. Dr. Warner noted Plaintiff "presented as talkative and engaged throughout the interview," she was able to "recall 3 words after a brief delay," and was able to follow oral and written instructions. Tr. 1851. Plaintiff reported suffering panic attacks "monthly" when she is "too far away from home," in large crowds, or at social gatherings. Tr. 1851. Plaintiff stated she "always has anxiety," her muscles are always tense, she is unable to concentrate, and she has chronic fear. Tr. 1852. Plaintiff

stated she stays in her pajamas during the day, has trouble cooking because she cannot follow recipes, shops early in the morning to avoid people, cannot use public transportation because she has panic attacks, and has difficulty making telephone calls due to anxiety.  Dr. Warner completed a Mental Residual Function Capacity Report in which she found Plaintiff is markedly limited in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; to "work in coordination with or proximity to others without being distracted by them"; to interact appropriately with the general public; to accept instructions and to respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or "exhibiting behavioral extremes"; and to travel in unfamiliar places or to use public transportation.  Tr. 1857.  Dr. Eckstein also noted Plaintiff's limitations were "first present" in 1980 and that Plaintiff would miss more than four days of work per month.

  The ALJ gave "some weight" to that portion of Dr. Warner's opinion in which she found Plaintiff has marked limitations in her ability to maintain a regular schedule, to work in coordination with others, to interact with the general public, to interact with supervisors and coworkers, and to travel to unfamiliar places.  The ALJ also accounted for these limitations in his evaluation of Plaintiff's RFC.  The ALJ, however, gave limited weight to that portion of Dr. Warner's

opinion in which she stated Plaintiff would miss more than four days of work per month and that Plaintiff's limitations were first present in 1980.  The ALJ noted these portions of Dr. Warner's opinion were based exclusively on Plaintiff's self-report during a single interview.  The Court has already concluded the ALJ did not err when he partially rejected Plaintiff's testimony.  In addition, the nature and extent of the treatment relationship is an acceptable factor for the ALJ to consider when assessing the credibility of a medical opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 676 99th Cir. 2017)(citing 20 C.F.R. § 404.1527(c)).  The ALJ also noted Dr. Warner conducted her examination of Plaintiff during the period when Plaintiff had stopped taking Wellbutrin, which had adequately controlled her symptoms of anxiety and PTSD.

On this record the Court concludes the ALJ did not err when he gave little weight to portions of Dr. Warner's opinion because he provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 25th day of February, 2020.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge